## McLEOD TIRE CORPORATION v. B. F. GOODRICH CO.

(Circuit Court of Appeals, Second Circuit. December 28, 1922.)

No. 97.

Patents ☞328—1,029,307 and 1,055,774, for tire construction, void for anticipation.

The McLeod patents, No. 1,029,307, for a method of making tire casings, the essence of which is the vulcanizing of the tire while stretched or expanded by pressure applied from within, and No. 1,055,577, for the product of such method, *held* void for anticipation in the prior art and prior use.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the McLeod Tire Corporation against the B. F. Goodrich Company. Decree for defendant, and complainant appeals. Affirmed. For opinion below, see 272 Fed. 901. See, also, 268 Fed. 205.

Bouvier & Beale, of New York City (B. F. Norris, of New York City, of counsel), for appellant.

Charles Neave and Merrell E. Clark, both of New York City (Robert M. Pierson, of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. This is a suit for infringement of two patents granted to McLeod, the first, No. 1,029,307, applied for November 13, 1911, granted June 11, 1912, for a method of making tire casings, and the second, No. 1,055,774, applied for March 10, 1912, and granted March 11, 1913, for pneumatic tire casing made in accordance with the method provided for in the first patent.

The automobile tire is made up of an outer casing, which is held on the rim of the wheel by engagement at the edges of the casing and by the inner tube contained in the casing, and which is inflated with air when ready for service. The tire casings are built up on a form of core, which is a metal ring having the contour of the inside of the casing. Upon this core are placed alternate layers of unvulcanized rubber and layers of fiber strands, which strands or fiber give strength to the tire casing. The strands are in the form of cords of threads, or in the form of a woven fabric, such as canvas. The inventive thought of the patents in suit relate to the building up of the tire on the cord; that is, the treatment during the process of vulcanization which is necessary in order to set the rubber and give it its desired wearing qualities. The appellant's claim is a new way of vulcanizing them while they are expanded or stretched by pressure applied from within. The inventor says he conceived the idea in April, 1911. He has never built any tires under his process or method. The patents do not explain with any degree of definiteness how much they should be stretched when vulcanized.

The defenses interposed are that the patents are anticipated by the prior patents and publications and prior commercial uses in this country; also that they are invalid, because their disclosure is insufficient. The claim of infringement is also contested. There are 11 claims in No. 1,029,307, the method patent. In substance, it is a method of making pneumatic tire casings, and is the forming of a casing structure of fabric or raw rubber, thereafter placing the threads of said fabric under uniform tension to approximately the limit of the elasticity of the threads by applying fluid pressure internally to said structure, and finally vulcanizing said structure, whereby the threads are set in their stretched condition. Appellant does not claim any new material is used in his method, or that it was the first to vulcanize a tire while subject to a fluid pressure applied internally of the structure, but the claim is a special tensioning or stretching of the fabric threads during vulcanization to approximately the limit of the elasticity of the threads. The patents do not specify any percentage of stretch. The percentage of stretch used by the appellee varies between 4 and 7½ per cent. in the tires which are alleged to infringe.

We think the patents of the prior art and prior uses defeat the appellant's claims. The appellant claims that the patents cover the idea that, if the tire is vulcanized in the position it is expected to assume when put in service under inflation, that tire, when complete and put into use under service pressure, will remain in the condition in which it was vulcanized; that is, it will not expand, and will not be as susceptible to injury as a tire which was not vulcanized in that way. The patent granted to Cowen August 11, 1896, No. 565,854, provided for a tire of a single tube type, and said it "is built up or formed in usual or suitable manner of alternate layers of rubber and woven fabric, as canvas or duck." It is then placed upon a rim, and when on that rim "is preferably inflated, as shown in Fig. 2, preferably not quite to the extent to which it will be inflated when placed in the vulcanizing chamber," and then, while it is unvulcanized, but inflated, it is covered

or wrapped with fabric. After the wrapping or covering has been applied, it is provided:

"The tire tube is preferably again and further inflated to a pressure, say, of 20 to 30 pounds, to more tightly press the tube against its covering fabric, and further and more distinctly to impress the surface of the covering fabric into the tread of the tire. During the process of vulcanization the air already forced within the tube greatly expands by reason of its being heated, thereby tending to burst the tube, this tendency, particularly prior to complete vulcanization, being restricted only by the covering material or materials, and I have found in practice that this bursting tendency is best restricted, and in the most simple and effective manner, by the spiral wrappings of fabric described, and by means of this or equivalent means for confining the tread-covering fabric upon the tire tube I am enabled to vulcanize the tire tube while in an inflated condition, practically such as it is called upon to assume when in use upon the road."

In the Moseley British patent of 1896, which was an outer casing and inner tube, vulcanization was provided while "the air tube is inflated. In this condition the tire is subjected to a vulcanizing temperature, or is otherwise treated so as to effect or complete the vulcanization." The specifications read that "this improved tire is not subject to the ordinary strains and stresses from air inflation when in use, and any wounds or cuts inflicted upon it have no tendency to open and spread." And claim 2 of that patent provides that, when applied to a tire cover or casing, it is "a pneumatic tire cover, which is vulcanized or has its vulcanization completed when occupying the same position and under the same conditions as when in use."

In the German patent to Reithoffer, No. 124,327, granted in 1901, substantially the same idea is incorporated as in the Moseley patent, and speaking of the "air bag" (the inner tube) it "expands the rubber, which because of the hearing has become yielding, together with its reinforcement, * * * and stretches the same in all its parts into the shape which the tire, when in use, is intended to assume."

There are other patents, such as the Gray, No. 15,471, granted in 1900, and the Johnstone, No. 12,847, of 1903, and the United States patent to Cobb, No. 969,131, granted August 30, 1910, which we think disclosed the idea of vulcanizing the tire while the inner tube is inflated, and there is a stretching or extension approximately in the shape which they were subsequently to assume while in service.

In addition thereto, there was ample evidence of a prior use disclosing the idea contended for by the appellant. The Silvertown tire, made in England, and the subsequent manufacture of this cord tire in this country in substantially the same manner as manufactured in England discloses the appellant's idea. In the latter part of 1910, or early in 1911, the Diamond Rubber Company commenced the manufacture of these tires under the licenses which had been purchased from the British originators of these tires and the process of making them. The process employed was the same that was employed by the Silvertown Company of London, England, the British licensees under the Gray & Sloper patents. It was from that company that the Diamond Company learned of the Silvertown process through Mr. Tew

and Mr. Converse, who were sent by the Diamond Company to the plant in England for study. This process included the step of vulcanizing the tires in the mold under internal hydraulic pressure applied by means of a water tube or water bag under such conditions that the tire had room to expand in the mold and thus stretch the cords. This equipment used by the Diamond Company was made in England in accordance with the specifications and drawings of the Silvertown Company, and was brought into this country at the time their employés returned after their period of study in the Silvertown plant in September, 1910. Subsequently equipment was made in this country.

The drawings for the Diamond equipment prescribed a sectional stretching during vulcanization of from 4 to 9 per cent. according to the different sizes of tires. The different sizes of cords were used in different sizes of tires and the percentage of stretch prescribed for such size of tire bore a definite relation to the ultimate strength of the particular cord used in tires of that size. Tires were actually stretched during vulcanization in substantial accordance with the percentages shown on the drawings and were then used in substantially the same condition. The District Judge found these facts. After a review of the evidence and this record, we agree with such findings. We find nothing in the appellant's patent indicating the extent of the stretch during vulcanization which will keep the tire from any expansion under service pressure, but the appellant's contention is that the expansion must be sufficient to put the threads under uniform tension throughout and to set them in the process of vulcanization at approximately the stretch that they were designed to have in the service with the inner tube inflated. This is too indefinite as to the extent of stretch. However, the prior art and use lead to the conclusion that the patents are void.

Decree affirmed.